ROGERS, Circuit Judge,
concurring in the judgment.
I agree largely with much of the majority opinion. I write briefly in light of the need for our court to rule promptly.
I am not confident that there is a strong likelihood of success with respect to the Equal Protection claim that is the basis for the district court’s November 22 order. That order is based on unequal treatment of two groups of ballots: 27 ballots cast in the Board’s office prior to the election where the ballot was for the wrong precinct (almost certainly due to official error) and a much larger number of ballots where the voter cast a ballot at the wrong precinct table (where doing so may have *248 been due to poll-worker error). The situations were sufficiently different that a bipartisan elections board unanimously counted the votes in the former situation, but did not count the votes in the latter situation.
It is not entirely clear whether the Board acted in accordance with Ohio law in counting the 27 votes, but either way the likelihood is not particularly strong that there was an Equal Protection violation under the principle of Bush v. Gore, 531 U.S. 98, 121 S.Ct. 525, 148 L.Ed.2d 388 (2000). The two wrong-precinct groups of ballots are sufficiently different that Ohio law could permit counting the 27 votes on the ground that the error was much more clearly and ascertainably not attributable to the voter than in the election-day polling place situations. And if Ohio law does not permit counting the 27 votes, then they were counted under a mistaken view of the law by the Board. In that circumstance, there should be a state-law challenge to the votes erroneously cast, not a counting of a much larger number of votes countywide that were erroneously cast in a similar — but not exactly the same — way. Moreover, counting improperly cast votes county-wide, where the ballots include trans-county district and state races, raises serious Equal Protection concerns in having Hamilton County votes counted differently from those of other Ohio counties.
Assuming that the district court’s November 22 order properly determined the likelihood of success on the Equal Protection claim, however, I agree that the court’s January 12 order must be vacated for the reasons given by the majority.
In this case we have the holding of the Ohio Supreme Court as to how the district court’s November 22 order should be complied with. The Ohio Supreme Court explicitly contemplated compliance with the district court’s November 22 order. See State ex rel. Painter v. Brunner, 128 Ohio St.3d 17, 941 N.E.2d 782, 795, 798 (2011).[1] This was a commendable exercise of discretion in a constitutional system where federal and state courts are independent of each other. State courts and lower federal courts need not, and should strive not to be, in conflict. The law and the public interest support tailoring of federal equitable relief so as to conform as closely as possible to the Ohio Supreme Court’s interpretation of Ohio election law.
While the state courts cannot control the enforcement of a federal court order enforcing federal law, the state courts may properly direct state officials responsible for carrying out the order on the choice of options consistent with the order. This is what the Ohio Supreme Court has done, and it appears to have done so in a thoughtful and deferential manner.
*249 The district court in the balance of equities in future orders should give great weight to the public interest in minimizing federal court control of state election law and practice. In my view, this factor weighs strongly in favor of conforming any further relief — as far as it is possible to do so consistent with the November 22 order — to the roadmap outlined by the Ohio Supreme Court.

. Id. at 795 ("Therefore, the secretary of state also has a duty to instruct election officials on the applicable requirements of federal election law as well as federal court orders that are applicable to them.”); id. at 798 ("And Judge Dlott's injunctive order did not require the investigation ordered by the secretary of state and conducted by the board of elections here. At best, any equal-protection claim would have merely required the same examination that the board conducted in — concluding incorrectly under Ohio law — that 27 provisional ballots cast in the wrong precinct at the board of elections during the early-voting period should be counted even though they were cast in the wrong precinct due to poll-worker error. That review was limited to an examination of the poll books, help-line records, and provisional-ballot envelopes and emanated from the uncontroverted evidence that these ballots were cast in the wring precinct due to poll-worker error.”); id. at 798 ("Therefore, we grant relators a writ of mandamus ... to compel the board of elections ... to instead review the 850 provisional ballots that are the subject of Judge Dlott’s order. ... ”).